UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ALVAH M. JONES,<br><br>    Plaintiff,<br><br>v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social<br>Security,<br><br>    Defendant. | No. CV-04-0413-CI<br><br>ORDER DENYING PLAINTIFF'S<br>MOTION FOR SUMMARY JUDGMENT<br>AND DIRECTING ENTRY OF<br>JUDGMENT FOR DEFENDANT |

BEFORE THE COURT are cross-Motions for Summary Judgment (Ct. Rec. 12, 15.) The parties have consented to proceed before a magistrate judge. (Ct. Rec. 7.) Attorney Rebecca M. Coufal represents Plaintiff; Assistant United States Attorney Pamela Derusha and Special Assistant United States Attorney Stephanie R. Martz represent Defendant. Ms. Coufal, Ms. DeRusha and Todd Swensen, legal intern with the United States Attorney's Office, appeared at oral argument before the undersigned on July 12, 2005, at 2:30 p.m., in Spokane, Washington. After reviewing the administrative record and the briefs filed by the parties, and considering argument of counsel, the court **DENIES** Plaintiff's Motion for Summary Judgment and directs entry of judgment in favor of Defendant.

Plaintiff, who was 44-years-old[1] at the time of the administrative decision, filed applications for Social Security disability insurance benefits (Title II) and Supplemental Security Income (SSI)(Title XVI) benefits on February 28, 2001, alleging an onset date February 25, 1998. He alleges a heart condition, back surgery with leg, arm, rotator cuff and elbow numbness. (Tr. 90.) Plaintiff also alleges he cannot read or write. (Id.) Plaintiff had prior applications for SSI in 1995, 1996 and 1999. (Tr. 406, 409, 419.) Plaintiff had a limited formal education and is functionally illiterate. (Tr. 207, 217.) He has past work experience as a mechanic, automobile detailer, and aluminum grinder. (Tr. 91.) Following a denial of benefits and reconsideration, a hearing was held before Administrative Law Judge (ALJ) Richard Hines. (Tr. 431-469.) The ALJ denied benefits; review was denied by the Appeals Council. (Tr. 6-8.) This appeal followed. Jurisdiction is appropriate pursuant to 42 U.S.C. § 405(g).

## ADMINISTRATIVE DECISION

The ALJ concluded Plaintiff had not engaged in substantial gainful activity and was insured for disability benefits through the date of the decision. (Tr. at 22.) Plaintiff had severe

---

[1] Plaintiff represents he was born on January 11, 1959, on his current applications for benefits. (Tr. 61, 423). Medical records from Drs. Hall and Demakas reflect a date of birth of January 11, 1949. (Tr. 180, 322.) Other records indicate a date of birth of January 11, 1949. (Tr. 285.) In his memorandum in support of his Motion for Summary Judgment, Plaintiff clarified his actual date of birth is January 11, 1959. (See Ct. Rec. 13, at 1, n.1.)

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT - 2

impairments, including mild degenerative disc disease of the cervical and lumbar spine, as well as low average intellectual functioning, but those impairments were found not to meet the Listings. (Tr. 19.) The ALJ also found Plaintiff carries a diagnosis of mild atherosclerotic heart disease with no evidence of obstructive coronary artery disease, and some evidence of evolving chronic obstructive pulmonary disease from smoking. (Tr. 19.) However, the ALJ found these impairments did result in more than minimal limitations in Plaintiff's ability to work and/or have not lasted the requisite 12 month duration period. (Id.) Plaintiff's subjective allegations were found not credible as to disability. (Id.) The ALJ found Plaintiff had the residual functional capacity to perform work in the light level of exertion subject to occasional climbing (ramp/stairs), balancing, stooping, kneeling, crouching, crawling; no climbing of ladder/rope/scaffolds; and work that is simple or non-complex with oral instructions. (Tr. 19.) Plaintiff's residual capacity precluded performance of his past relevant work. Using the Grids as a framework at step five, the ALJ found Plaintiff was "younger individual between the ages of 18 and 44," and had a "high school (or high school equivalent) education"[2]

---

[2]The record does not support the ALJ's finding of "high school education or high school equivalent." In the hypothetical to the vocational expert, Plaintiff was described as a "younger individual . . . with a marginal education . . . 7th grade but special education." (Tr. 466.) The vocational expert's testimony was based on this level of education, and she concluded that Plaintiff could perform work in the national economy. (Tr. 467.) The ALJ's

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT - 3

and no transferrable skills, but was able to perform a significant number of light level jobs in the national economy. (Tr. 22-23.) He found Plaintiff not under a "disability" as defined by the Social Security Act. (Tr. 23.)

**ISSUES**

The question presented is whether there was substantial evidence to support the ALJ's decision denying benefits and, if so, whether that decision was based on proper legal standards. Plaintiff asserts the ALJ erred when he (1) failed to fully develop the record; (2) improperly found Plaintiff not credible; (3) presented an incomplete hypothetical to the vocational expert and (4) failed to call a medical expert to explain medical evidence.

**STANDARD OF REVIEW**

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

> The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as

---

erroneous finding is harmless error. *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990) (applying the harmless error standard). The erroneous finding regarding Plaintiff's level of education does not affect the ALJ's ultimate finding, using the Medical-Vocational Rule 202.21 as a framework, that Plaintiff is not disabled. *See cf.* Medical-Vocational Rule 202.16 (younger individual, with residual functional capacity limited to "light" work, illiterate or unable to communicate in English, unskilled work experience is not disabled). Further, the record supports the ALJ's finding that Plaintiff was not as functionally limited as he alleged. (Tr. 20.)

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT - 4

being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Comm'r of Soc. Sec. Admin.* 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

**SEQUENTIAL PROCESS**

Also in *Edlund*, 253 F.3d at 1156-1157, the court set out the requirements necessary to establish disability:

> Under the Social Security Act, individuals who are "under a disability" are eligible to receive benefits. 42 U.S.C. § 423(a)(1)(D). A "disability" is defined as "any medically determinable physical or mental impairment" which prevents one from engaging "in any substantial gainful activity" and is expected to result in death or last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Such an impairment must result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The Act also provides that a claimant will be eligible for benefits only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . " 42 U.S.C. § 423(d)(2)(A). Thus, the definition of disability consists of both medical and vocational components.
>
> In evaluating whether a claimant suffers from a disability, an ALJ must apply a five-step sequential inquiry addressing both components of the definition, until a question is answered affirmatively or negatively in such a way that an ultimate determination can be made. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). "The claimant bears the burden of proving that [s]he is disabled." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir.

1999).  This requires the presentation of "complete and detailed objective medical reports of h[is] condition from licensed medical professionals." *Id*. (citing 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)).

**ANALYSIS**

1. Credibility

Plaintiff contends the ALJ erred in finding him not credible when he failed to reject his testimony with clear and convincing reasons.  He argues Dr. Bostwick's opinions that he exhibited partial malingering should not have been given "great weight" by the ALJ" because it is not supported by adequate objective testing.  (Ct. Rec. 13, at 6-8.)  Defendant asserts that, despite competent evidence of malingering (which precludes the requirement of clear and convincing reasons), the ALJ provided appropriate reasons for rejecting Plaintiff's testimony.  (Ct. Rec. 16, at 7.)

The ALJ must engage in a two-step analysis in deciding whether to admit a claimant's subjective symptom testimony. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).  Under the first step, see *Cotton v. Bowen*, 799 F.2d 1403, 1405 (9th Cir. 1986), the claimant must produce objective medical evidence of underlying "impairment," and must show that the impairment, or a combination of impairments, "could reasonably be expected to produce pain or other symptoms." *Smolen,* 80 F.3d at 1281-82.  Once the *Cotton* test is met, the ALJ must evaluate the credibility of the claimant. *Id.* If there is no affirmative evidence of malingering, the ALJ must provide "clear and convincing" reasons for rejecting Plaintiff's pain and/or symptom testimony. *Rollins v. Massanari*, 261 F.3d 853, 858 (9th Cir. 2001); *Smolen*, 80 F.3d at 1283-84.  The ALJ may consider the following factors when weighing the claimant's

credibility: "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [his/her] testimony and [his/her] conduct, [claimant's] daily activities, [his/her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). If the ALJ's credibility finding is supported by substantial evidence in the record, the court may not engage in second-guessing. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). If a reason given by the ALJ is not supported by the evidence, the ALJ's decision may be supported under a harmless error standard. *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990) (applying the harmless error standard)*; Booz v. Sec'y of Health and Human Serv.*, 734 F.2d 1378, 1380 (9th Cir. 1984) (same).

Here, Plaintiff has presented evidence of a back condition that reasonably could be expected to produce pain, thus satisfying the *Cotton* test. Plaintiff testified he could not walk any distance, could only lift one gallon of milk, and could not bend over due to pain and numbness in his legs, arm and back. (Tr. 456-57.) He stated he only sleeps two to three hours at a time, could only stand in one spot for 30 minutes and sit for 15-20 minutes. (Tr. 460.) He testified he lies down three to four times a day for 20 to 25 minutes due to cramping and pain. (Id.) He stated his heart "acts up" when he exerts himself, about every two or three months, and he takes nitroglycerin for his heart problems. (Tr. 461-62.)

The ALJ found Plaintiff not credible based on Dr. Bostwick's diagnosis of partial malingering. (Tr. 20.) Plaintiff asserts that

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT - 7

Dr. Bostwick's findings are not supported by adequate objective testing and are suspect due to varying reports by the medical providers. (Ct. Rec. 13, at 7.) This argument is without merit.

Dr. Bostwick's opinions are based on a lengthy claimant interview, review of extensive medical records and the following objective psychological tests: Wechsler Adult Intelligence Scale-Revised, Wide Range Achievement Test-3, Controlled Oral Word Association Test, Mental Control Tasks, Rey Auditory Verbal Learning Test, Rey Complex Figure Test, Portland and Babcock Story Recall Tests, Draw-a-Clock test, Draw-a-Bicycle Test, Grip Strength Test, Trails A, Seashore Rhythm Test, Finger oscillation Test, Lateral Dominance Examination, Reitan-Klove Sensory -Perceptual Examination, 15 Item Memorization Test, Neuropsychological Symptom Checklist, Benton Visual Retention Test-Revised, Wisconsin Card Sorting Test. (Tr. 203.) A MMPI-2 personality assessment was not administered due to Plaintiff's illiteracy and his limited intellectual ability. (Tr. 218.) However, Dr. Bostwick noted that Plaintiff's test battery was modified to accommodate his illiteracy. (Id.)

Dr. Bostwick concluded Plaintiff is functioning within the borderline/low average range of general intellectual ability, with severely impaired linguistic abilities, poor reading, spelling, writing and arithmetic skills and clear evidence of dyseidetic and dysphonetic dyslexia. However, based on test results and medical history, Dr. Bostwick diagnosed partial malingering "manifested primarily in exaggeration of symptoms, inconsistencies in performance and self-report, objective evidence for feigning on some neuropsychological procedures, and a history of diminished effort both in physical therapy as well as on current examination." (Tr.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT - 8

221.)

Dr. Bostwick's opinion and the ALJ's finding of partial malingering are supported by substantial evidence. In addition to the lack of effort observed by Dr. Bostwick (Tr. 220), the record includes reports from Plaintiff's physical therapist that corroborate Plaintiff's lack of effort in his physical capacities evaluation. The record also includes reports from Dr. Langsberger and Dr. Nall, treating physicians, expressing concerns about Plaintiff's exaggeration of symptoms. (Tr. 151, 195, 200, 324.) Both treating physicians opined Plaintiff was capable of sedentary to light work. (Tr. 195, 329.) Dr. George Rodkey, agency physician who reviewed and evaluated Plaintiff's medical records in the physical residual functional capacities assessment concluded "[s]ymptoms/report of almost total loss of function far exceed objective findings. This statement is made by <u>all</u> health care providers throughout evidence." (Tr. 354.)[3]

---

[3] Plaintiff points out the discrepancies in his birth date on medical records and argues this reflects the unreliability of medical source reports and/or evidence of his neurological impairments. (Ct. Rec. 13, at 6.) This argument fails, as the record reflects it is the Plaintiff's lack of consistency in his self-report and his observed lack of effort in objective testing that serve as a basis for the ALJ's credibility findings, not obvious clerical errors in medical records. Further, the current neurological evaluation from Dr. Demakas indicates "no deficit of memory or mentation, oriented to person, place and time. Attention span and concentration are adequate." (Tr. 178.) Dr. Bostwick's

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT - 9

Although there was evidence of malingering in Dr. Bostwick's report as well as notations from other providers, the ALJ gave other clear and convincing reasons to discount Plaintiff's statements. For example, the ALJ found Plaintiff made inconsistent statements to medical providers, gave subjective inconsistent reports of heart attacks and strokes without supporting medical documentation, and gave exaggerated and inconsistent testimony. (Tr. 19.) Specifically, Plaintiff reported different levels of education to different providers, stating to the Medical Evaluation Panel that he had reached 12th grade, but his education level was second grade. (Tr. 227.) At the hearing, Plaintiff testified he had completed 7th grade. (Tr. 436.) And on his disability report, he indicated he finished 12th grade in special education. (Tr. 96.)

Plaintiff's treating physician, Dr. Nall, stated Plaintiff's symptoms "exceed objective findings." (Tr. 18.) This is supported by Dr. Nall's records, where he reports his observation that Plaintiff exhibited a "normal gait and normal movement" while in the reception area, but grimaced and groaned during the exam, even though his "straight-leg raising with distraction while seated was not painful." (Tr. 322-23.) Dr. Nall also observed that Plaintiff's TENS unit was not turned on and appeared dusty, and reported "his pain behaviors and fit appearance suggest that he may exaggerate his symptoms which has been noted in the past." (Tr. 324.) These are appropriate reasons to discount Plaintiff's

---

objective testing revealed "feigning on some neuropsychological procedures, and a history of diminished effort both in physical therapy as well as on current examination." (Tr. 221.)

testimony. *Batson v. Comm. of the Soc. Sec. Admin.,* 359 F.3d 1190, 1196 (9th Cir. 2004). The ALJ did not err in his credibility finding.

2.  ALJ's Duty to Develop the Record

Based on medical evidence, the ALJ found Plaintiff "carries a diagnosis of mild atherosclerotic heart disease with no evidence of obstructive coronary arterial disease and chest x-rays have revealed some evidence of evolving chronic obstructive pulmonary disease in a smoker." (Tr. 19.) Plaintiff contends the ALJ erred when he failed to obtain Plaintiff's medical records from California to evaluate the severity of his alleged heart condition. (Ct. Rec. 13, at 5.) Defendant responds that the ALJ found Plaintiff's heart condition caused him no more than minimal limitations in his ability to work; therefore, there was no need to develop an earlier medical history. (Ct. Rec. 16, at 12.)

In Social Security proceedings, the burden of proof is on the claimant to prove the existence of a severe physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908.

The Regulations further state "[w]e will develop your complete medical history for at least the 12 months preceding the month in which you file your application unless there is a reason to believe that development of an earlier period is necessary." 20 C.F.R. § 404.1512 (d), 416.912 (d). An ALJ's duty to develop the record further is triggered "only when there is ambiguous evidence or when the record is inadequate for proper evaluation of evidence." *Mayes v. Massanari*, 276 F.3d 453, 4509-60 (9th Cir. 2001) *(citing*

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT - 11

*Tonapetyan v. Halter)*, 242 F.3d 1144, 1150 (9th Cir. 2001)).

Although Plaintiff alleged a heart condition in his 2001 disability report, he did not submit medical evidence to support the existence of this impairment. (Tr. 89.) Plaintiff self-reported to various treatment providers that he had strokes and heart attacks in the 1980's and 1990's. However, medical sources consistently reported that prior records were unavailable. (Tr. 87, 193, 259, 381.) In September 1998, Dr. Edgar Figueroa referred Plaintiff to John Demakas, M.D., for a neurological consultation. (Tr. 176.) Dr. Demakas reported Plaintiff had a family history of cardiac problems, had suffered a stroke in the 1990's from which he had fully recovered, and also had a myocardial infarction. (Tr. 177.) Upon examination, Dr. Demakas reported "[h]eart auscultation demonstrates no abnormal sounds or murmurs. Peripheral vascular system shows no edema by palpation and observation." Neurologically, he found Plaintiff demonstrated "speech fluent. No deficit of memory or mentation, oriented to person, place and time. Attention span and concentration are adequate." (Tr. 178.) In December 1998, Plaintiff went to Deer Park Hospital ER, complaining of back pain and shortness of breath. (Tr. 381.) Chart notes indicate "chest pain, nonspecific, atypical for cardiac." (Tr. 379.)

In January 2000, Plaintiff reported to examining psychologist Allen Bostwick, Ph.D., that he had five strokes and three heart attacks in the 1990's, the last being in 1996. (Tr. 206.) Medical reports reviewed by Dr. Bostwick indicated Plaintiff reported five heart attacks in the 1980's while living in Roosevelt, California. (Tr. 212.) Treating physician E.A. Figueroa, M.D., saw Plaintiff in

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT - 12

January 2000.  At that time, Plaintiff reported he was waiting for the results of a cardiology examination, but no reports were provided at that visit.  Dr. Figueroa reported "on further review of the charts, it does not show any evidence of any permanent heart condition."  (Tr. 260.)  On February 22, 2001, Plaintiff saw Dr. Figueroa for follow-up to an emergency room visit the day before at Deaconess Hospital.  According to plaintiff, medical providers told him he had had a heart attack.  Plaintiff reported he was sent home and given a prescription, which he had not filled.  Upon examination, Dr. Figueroa found no evidence of heart condition.  (Tr. 277.)  The February 21, 2001, x-ray report from Deaconess Medical Center indicates "the heart size and pulmonary vascularity appear normal."  No abnormalities were noted.  (Tr. 279.)

    Neither of Plaintiff's treating physicians found medical evidence of a serious heart condition.  Plaintiff refers to no medical evidence of heart problems to support his argument.  The only basis for this alleged impairment in the record is Plaintiff's statements, which as discussed above, are inconsistent and were properly found to be not credible.  Plaintiff's statements, without medical evidence, are not sufficient to trigger the ALJ's duty to develop the record.  Further, the alleged heart attacks occurred approximately 10 years ago, and current medical records show no serious heart problems of any duration.  Plaintiff has not identified specific medical records or stated with certainty that such records exist.  His speculation that there might be records to confirm a heart condition before he stopped working does not merit a remand for further development of the record.

3.   <u>Incomplete Hypothetical to Vocational Expert</u>

Plaintiff contends the ALJ's hypothetical should have included his illiteracy and moderate and marked restrictions cited in the DDD Psychiatric Review Technique Form (PRTF) and Mental residual Functional Capacity Assessment (RFC). (Ct. Rec. 13, at 10.) He argues that without these restrictions, the vocational expert's testimony cannot be considered substantial evidence. (Id. at 9.)

Dr. Bostwick opined Plaintiff was illiterate based on objective testing results and Plaintiff's own statements. Plaintiff testified he completed 7th grade but was evaluated at a second grade level. (Tr. 436.) He stated he could not read or write more than his name and could do little, if any, arithmetic. At the hearing, Plaintiff was described as a younger individual with a marginal education, 7th grade but special education, and work experience at skilled and unskilled, medium strength work. (Tr. 466.) The ALJ's hypothetical included the following: Plaintiff was able to perform the "full range of light work, further modified by only occasional climbing of ramps or stairs, no climbing of ladders, scaffolds, only occasional balancing, stooping, kneeling, crouching, crawling . . . . simple repetitive work and requiring no written communication . . . instructions, one to two steps." (Tr. 466.)

Vocational expert Deborah LaPoint found Plaintiff could perform work as a cafeteria attendant, agricultural produce sorter, and production assembler. (Tr. 467.) Adding the ALJ's additional restriction of "no contact with the public," Ms. Lapoint stated that would not significantly impact her opinion, as the jobs as produce sorter and production assembler do not involve work with the public, and the cafeteria attendant does not interact directly with the

public. (Tr. 468.) Plaintiff objects that this opinion does not factor in the full impact of illiteracy, and thus the case must be remanded for new vocational expert testimony. (Ct. Rec. 13, at 10.)

Illiteracy does not, per se, render a claimant disabled. *Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001). The Medical-Vocational Rules include categories for individuals who are illiterate or unable to communicate in English. 20 C.F.R. Pt. 404, Subpt. P, App. 2. Here, Ms. Lapoint specified in her testimony that the hypothetical individual she was assessing had a marginal education and could not process written instructions. (Tr. 466.) Further, the ALJ specifically added non-exertional restrictions of no written communication, only oral instructions and one to two steps in simple repetitive work in his hypothetical. (Tr. 466.) It is clear from the hearing transcript that the ALJ included Plaintiff's limitations in reading and writing in his hypothetical. The record supports the ALJ's assessment: Plaintiff testified he had finished 7th grade and had the equivalent of a second grade education. (Tr. 436.) He stated he helped his children with their paperwork. He sustained employment as an auto mechanic for four years and acknowledged he could perform tasks and follow directions with oral instructions. (Tr. 91, 448, 442.) Plaintiff testified at the hearing that he had taken the written driver's test three times to get his drivers license. (Tr. 447.) When asked by the ALJ if he had read the test, he stated "I filled it out to where I thought, you know, was best of it and I got it by one." (Id.)

Objective intellectual testing indicates Plaintiff functions within the upper borderline range of functioning. (Tr. 216.) The ALJ properly considered Plaintiff's malingering and lack of

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT - 15

credibility in assessing the RFC and determined Plaintiff "is not as functionally limited as he has alleged." (Tr. 19-20.) The ALJ's RFC findings will not be disturbed if supported by substantial evidence. *See Batson*, 359 F.3d at 1197. There was no error in the ALJ's hypothetical or in his ultimate RFC finding.

Plaintiff also argues that the ALJ improperly excluded from his hypothetical marked and moderate restrictions found in the State agency mental residual functional capacity; therefore, the matter must be remanded for new vocational expert testimony. (Ct. Rec. 17, at 2-3.) In a June 23, 2001, RFC assessment, non-examining psychiatrist John McRae, M.D., included in his summary conclusions that Plaintiff was markedly limited in his abilities to understand and remember detailed instructions, carry out detailed instructions, and interact appropriately with the general public due to borderline intellectual functioning, learning disorders and personality disorders (passive aggressive). Other evaluated abilities were not significantly limited. (Tr. 331, 338, 345.) His assessment was based on a review of records, including Dr. Bostwick's examination. (Tr. 343.) In his narrative, which is an explanation clarifying the summary conclusions discussed above, Dr. McRae concluded Plaintiff should not have a job that required talking to people. (Tr. 347.) Dr. McRae also opined Plaintiff's supervisor should know his limitations and give work that is neither too detailed nor complex. (Id.)

Medical consultants in the State agencies such as Dr. McRae make findings of fact at the initial stages of social security proceedings. Once the proceedings reach the ALJ level, however, those findings of fact become opinion evidence. 20 C.F.R. §

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT - 16

404.1527(f); *see also SSR 96-5p.* As such, they are subject to the applicable rules in 20 C.F.R. §§ 404.1527, 416.927, in determining the weight given those opinions.[4] Here, the limitations in Dr. McRae's narrative conclusion are consistent with the ALJ's hypothetical (no contact with public; no written instructions, simple, repetitive one to two step tasks). (Tr. 466.) Further, Dr. McRae's opinions adopted by the ALJ also are supported by those of examining psychologist, Dr. Bostwick.

Dr. Bostwick concluded Plaintiff was functionally limited due to his borderline intelligence and learning disorders, but "there do not appear to be any significant social and interpersonal barriers that would compromise him in any work situation." (Tr. 221.) His conclusions were based on a face-to-face client interview and extensive objective testing. It is the ALJ's responsibility to resolve conflicts or any ambiguity in the medical evidence in formulating the hypothetical to a vocational expert. *See Andrews*, 53 F.3d at 1039. As an examining medical source who had the opportunity to interact with, observe and test Plaintiff, Dr. Bostwick's opinions are given more weight than those of a non-examining medical source. *Benton v. Barnhart*, 331 F.3d 1030, 1038 (9th Cir. 2003). The ALJ properly included in his hypothetical Dr. McRae's narrative conclusions that were consistent with Dr. Bostwick's opinions, which were based on personal observation and

---

[4] E.g.: "*Examining relationship.* Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you." 20 C.F.R. §§404.1527 (d)(1), 416.927 (d)(1).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT - 17

objective evidence. In regards to Plaintiff's argument that additional limitations should have been included, the ALJ is not required to accept as true the limitations propounded by Plaintiff's counsel. *Martinez v. Heckler,* 807 F.2d 771, 773 (9th Cir. 1986). Because the limitations included in the ALJ's hypothetical question are supported by the record, there was no error.

4.  <u>Failure to Call Medical Expert</u>

Plaintiff asserts the ALJ should have called a medical expert to interpret the psychological evidence. Defendant, citing Social Security Ruling 96-5, responds that a medical expert is only required to resolve issues of equivalency.[5]

Here, at step two, the ALJ found Plaintiff's impairments did not meet or medically equal the Listings. (Tr. 22.) This finding has not been challenged, and a medical expert was not required to clarify medical equivalency issues. During administrative hearings, however, an ALJ may take testimony of an medical expert to assist in the interpretation of medical evidence. 20 C.F.R. §§ 404.1527(f)

---

[5]An updated medical opinion from a medical expert is required "[w]hen no additional medical evidence is received, but in the opinion of the [ALJ] or the Appeals Council the symptoms, signs and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable; or

When additional medical evidence is received that in the opinion of the [ALJ] or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment(s)is not equivalent in severity to any impairment of the List of Impairments." SSR 96-6p.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT - 18

1  (2)(iii), 416.927(f)(2)(iii).  This is typically the case where
2  there is conflicting or ambiguous evidence from treating and/or
3  examining medical sources.  See *Lester v. Chater,* 81 F.3d 821, 831
4  (9th Cir. 1996); *Andrews,* 53 F.3d at 1041; *Magallanes,* 881 F. 2d at
5  753.  Here, Plaintiff does not assert conflicting medical opinions
6  by his treating physicians.  Rather, he contends the complexity of
7  the psychological report required a medical expert to explain them.
8  The decision to call a medical expert is within the discretion of
9  the ALJ.  As stated in *Magallanes*, the "analysis and opinion of an
10 expert selected by the ALJ <u>may</u> be helpful to the ALJ's adjudication,
11 and we should not impose burdensome procedural requirements that
12 facilitate . . . second guessing the ALJ's resolution of conflicting
13 medical testimony." *Magallanes*, 881 F.2d at 753.  (Emphasis added.)
14 It is well-settled law that it is the province of the ALJ to resolve
15 ambiguities and/or conflicts in the medical evidence and the court
16 may not second guess his determinations as long as they are
17 supported by the record.  *Andrews,* 53 F.3d at 1039.  Here, the ALJ's
18 findings regarding Plaintiff's psychological condition and mental
19 functioning are supported by substantial evidence, including
20 objective test results.  Plaintiff's contention that the ALJ erred
21 in not calling a medical expert is without merit.

## CONCLUSION

23    The ALJ properly rejected Plaintiff's testimony based on the
24 diagnosis of partial malingering.  Credibility findings are further
25 supported by reports of lack of effort, lack of credibility and
26 exaggeration of symptoms by treating and examining medical sources.
27 The ALJ did not have a duty to develop the record where allegations
28 of a heart condition were based solely on Plaintiff's unreliable

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING
ENTRY OF JUDGMENT FOR DEFENDANT - 19

self-reports and unsupported by any current medical records. The ALJ's hypothetical adequately described Plaintiff's limitations as supported by the record as a whole, and a medical expert was not required to interpret the psychological evidence. Accordingly,

**IT IS ORDERED**:

1. Plaintiff's Motion for Summary Judgment **(Ct. Rec. 12)** is **DENIED**.

2. Defendant's Motion for Summary Judgment dismissal **(Ct. Rec. 15)** is **GRANTED**; Plaintiff's Complaint and claims are **DISMISSED WITH PREJUDICE.**

3. The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. The file shall be **CLOSED** and judgment entered for Defendant.

DATED August 9, 2005.


                     S/ CYNTHIA IMBROGNO
                   UNITED STATES MAGISTRATE JUDGE